IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DENNIS HENDERSON,**<br>    Plaintiff,<br><br>    v.<br><br>**EDENS CORPORATION,**<br>    Defendant. | CIVIL ACTION<br><br><br><br>NO. 09-1308 |

MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS

**Baylson, J.**                                                                                                              **August  20, 2015**

## I.     Introduction

In this employment discrimination and retaliation case, *pro se* Plaintiff Dennis Henderson alleges that Defendant Edens Corporation, his former employer, violated the Age Discrimination in Employment Act (ADEA), Americans With Disabilities Act (ADA), and Pennsylvania Human Relations Act (PHRA) by failing to accommodate his disability, failing to stop harassment, providing unequal terms and conditions of employment, and retaliating against him. In his filings, he also refers to violations of the Pennsylvania Workers' Compensation Act (PWCA). Edens has moved to dismiss Henderson's complaint in its entirety under Fed. R. Civ. P. 12(b)(6), arguing that it fails to state a claim upon which relief can be granted. For the following reasons, the Court will grant Edens' motion and dismiss Henderson's complaint in its entirety with prejudice.

## II.     Procedural History

Henderson sought to file this case *in forma pauperis* on March 26, 2009 (ECF 1). After the Court determined that he could pay the filing fee, Henderson filed his initial complaint on

1

June 6, 2009 (ECF 7). For unknown reasons, Edens was not served for over five years, with service finally completed on July 7, 2014 (ECF 10). After receiving an extension of time to file a response, Edens filed a Rule 12(e) motion for a more definite statement of the complaint (ECF 17), which the Court granted on December 11, 2014 (ECF 24, 25).

Henderson filed an Amended Complaint on December 15, 2014 (ECF 27), along with a "More Definite Statement" that sought to clarify his claims (ECF 26). Henderson's Amended Complaint alleges violations of the ADEA and ADA based on failure to reasonably accommodate his disability, failure to stop harassment, unequal terms and conditions of employment, retaliation, and age discrimination. ECF 27 at 1-3. In addition, in his "More Definite Statement," Henderson alleged violations of the PHRA, 43 P.S. § 962 and violations of sections 409, 416, 435, 440, and 1102 of the PWCA, 77 P.S. §§ 733, 821, 991, 996, 1039.2. See also Pl. Response (ECF 33) (referring to violations of "Worker Coumps [sic] Laws," "EEOC Law," "Human Relation Law," and "Courts Law").

Edens filed the present Motion to Dismiss under Rule 12(b)(6) on January 30, 2015 (ECF 32), and Henderson filed a response on February 10, 2015 (ECF 33). On March 23, 2015 the Court ordered Henderson to file and serve upon Defendant a more substantive response (ECF 35), which Henderson filed on April 8, 2015 (ECF 37).[1]

### III.  Factual Allegations

In considering this motion to dismiss, the Court accepts Plaintiff's well-pleaded factual allegations as true. However, in his Amended Complaint, Henderson did not state any facts, writing instead that "I will attach additional undisputable eviden[ce] to define definitely." Am. Compl. at 3. Henderson then submitted 46 pages of unorganized exhibits with his Amended

---

[1] Henderson has also filed a variety of other miscellaneous motions, which the Court resolved in prior orders dated December 11, 2014 (ECF 25) and July 20, 2015 (ECF 40).

Complaint (ECF 27-1), a five-page exhibit with his first response to the motion (ECF 33 at 3-7), and an additional 44 pages of unorganized and sometimes duplicative exhibits with his second response to the motion (ECF 37 at 8-51).[2] With its Motion to Dismiss, Edens attached a copy of a 2009 Compromise and Release Agreement related to Henderson's workers' compensation proceedings. Mot. to Dismiss, Ex. A (ECF 32 at 19-30). Based on a careful review of these documents, the Court has extracted the following factual allegations.

Henderson was hired by Edens as a Paratransit driver on or about September 28, 2005. Equal Employment Opportunity Commission (EEOC) Charge, ECF 27-1 at 7. On or about November 24, 2006, Henderson filed an employment discrimination complaint against Edens, which related to a dispute over garnishments from Henderson's wages. Id.; More Def. State., ECF 26 at 1. On March 14, 2007, Henderson's complaint was successfully mediated by the EEOC and settled for $955.00. EEOC Charge, ECF 27-1 at 7; 2007 Agreement, ECF 27-1 at 43-44.

On April 27, 2007, while driving for Edens, Henderson's vehicle was involved in a traffic accident and Henderson was seriously injured. EEOC Charge, ECF 27-1 at 7. A few days later, Henderson began receiving treatment at WORKNET Occupational Med-Roxborough and was approved for workers' compensation benefits. Id. Effective May 21, 2007, WORKNET released Henderson to full duty, although he was still taking narcotic pain medications. Id. On May 24, 2007, Edens' Risk Manager Len Roberts sent Henderson a letter noting that he had been cleared to return to work and instructing him to report for full-time work performing administrative duties. Roberts Ltr., May 24, 2007 (ECF 37 at 11). On June 1, 2007, Henderson saw a private

---

[2] Because these exhibits are not separately tabbed or labeled, and the pages of individual documents are sometimes in the wrong order or interspersed among other documents, the citations to Henderson's exhibits in this Memorandum use a general identifier for each document and the page numbers assigned by the ECF system.

physician who placed him out of work. EEOC Charge, ECF 27-1 at 7; Med. Records, ECF 37 at 29, 49.

Henderson alleges that he kept Edens informed of his medical status and that Roberts nevertheless reported to the State Workers Insurance Fund (SWIF) that Henderson was cleared for full duty work, resulting in the suspension of Henderson's workers' compensation benefits.[3] EEOC Compl., ECF 27-1 at 7. On June 12, 2007, Henderson, through counsel, filed a Petition for Penalties with the Pennsylvania Bureau of Workers' Compensation, alleging that Edens had violated the PWCA. Pet., ECF 27-1 at 17-20. On June 18, 2007, Edens and SWIF provided Henderson with a Notification of Suspension or Modification of his benefits, which Henderson, through counsel, refused to sign on the basis that Henderson was still out of work. Notification, ECF 27-1 at 13, 45; Counsel Ltr., ECF 27-1 at 14.

Shortly thereafter, on June 21, 2007, Roberts sent Henderson a second letter that noted that WORKNET had cleared Henderson for full duty work, stated that Henderson was considered a "no call/no show," acknowledged that Henderson was seeing his private doctor, stated that Henderson was supposed to receive all treatment for job-related injuries through WORKNET for 90 days, and requested that Henderson get a second opinion from WORKNET on June 28, 2007. Roberts Ltr., ECF 27-1 at 40, 46. On July 11, 2007, Roberts sent another letter to Henderson that reiterated that Edens' physicians had cleared him for work and that he was supposed to be treated by Edens' physicians for 90 days after his injury, noted that Henderson

---

[3] In the January 10, 2008 intake interview notes for Henderson's EEOC charge of discrimination, Henderson alleged that Roberts reported to SWIF on June 16, 2007 that Henderson was cleared for full duty work. Notes, ECF 37 at 50. This date is inconsistent given that Henderson's counsel filed a workers' compensation Petition for Penalties on June 12, 2007, alleging that his benefits had been improperly terminated. Pet., ECF 27-1 at 17-20. For purposes of this motion, the Court will assume that someone at Edens took an action in late May or early June 2007 that resulted in the suspension of Henderson's workers' compensation benefits.

4

had not appeared for a second opinion evaluation from WORKNET and that Henderson continued to be considered a "no call/no show," and requested that Henderson contact Roberts regarding his status at Edens. Roberts Ltr., ECF 27-1 at 41.

On September 19, 2007, a state Workers' Compensation Judge approved a stipulation among Henderson, Edens, and SWIF that granted Henderson's claim petition and attorney's fees, ordered Edens to make payment as set out in the stipulation, and dismissed as moot Henderson's penalty petition. 2007 Decision, ECF 27-1 at 21-22. Although he did not attach the full stipulation, Henderson alleges that the judge "reversed the decision to suspend my claim and awarded me benefits retroactive to the time in which they were originally suspended." EEOC Charge, ECF 27-1 at 8.

On January 10, 2008, Henderson filed a Charge of Discrimination with the EEOC in Philadelphia. Id., ECF 27-1 at 7-8. The Charge alleged discrimination based on retaliation and disability beginning on June 15, 2007. In addition to the facts already summarized, the Charge alleged that Edens' conduct had forced Henderson to hire counsel, resulting in an ongoing 20 percent deduction from his workers' compensation for attorneys' fees. Id., ECF 27-1 at 8. It also alleged that in October 2007, Henderson was given a raise to only $9.93 per hour while other drivers with at least two years of service received raises to $10.25 per hour. Id. The Charge further alleged that Edens "perceives me as disabled" and that Edens harassed Henderson by threatening his financial security, in violation of the ADA. Id. Finally, the Charge alleged that in retaliation for his prior opposition to unlawful employment practices, Edens had not awarded Henderson the full wage increase to which he was entitled in October 2007. Id.

Henderson's EEOC Charge was forwarded to the Pennsylvania Human Relations Commission (PHRC) and to Edens. Election Option, ECF 37 at 14; Notice of Charge, ECF 27-1

at 4; Transmittal, ECF 37 at 19. It was also confirmed in a January 15, 2008 letter from the EEOC to Henderson. EEOC Ltr., ECF 27-1 at 3. The Charge itself, the confirmation letter to Henderson, and the Notice to Edens all specified that Henderson was alleging violations of the ADA and omitted any reference to age discrimination. EEOC Charge, ECF 27-1 at 7-8; EEOC Ltr., ECF 27-1 at 3; Notice, ECF 27-1 at 4.

After Henderson's charge was not resolved through Alternative Dispute Resolution, the EEOC requested that Edens file a position statement. EEOC Ltrs., ECF 37 at 8, 15. Edens submitted its position statement on December 9, 2008. ECF 33 at 3-7. Edens' position statement contended that Edens had notified SWIF that Henderson was cleared for full duty work prior to learning that Henderson's private doctor had placed him out of work and that Henderson's pay increases were identical to other similar employees. Id. Edens argued that there was no evidence that it had discriminated or retaliated against Henderson with respect to his pay or his workers' compensation benefits. Id.

On January 20, 2009, the EEOC forwarded a copy of Edens' position statement to Henderson and requested his response. EEOC Ltr., ECF 37 at 17-18. It is unclear if Henderson responded, but on February 27, 2009, the EEOC dismissed Henderson's charge and notified him of his right to file suit. Dismissal, ECF 27-1 at 1-2. Similarly, on February 26, 2009, the PHRC sent Henderson a letter announcing that it was closing Henderson's case based on the accrual of his private suit rights and the EEOC's lead role in investigating his claims. PHRC Ltr., ECF 27-1 at 5-6.

Henderson's workers' compensation claims were also resolved in early 2009. On January 28, 2009, a Pennsylvania Workers' Compensation Judge approved a Compromise and Release Agreement among Henderson, Edens, and SWIF. 2009 Decision, ECF 32 at 19-30. The

6

agreement provided Henderson with a lump sum payment of $75,000.00, with 20 percent designated for attorneys' fees. Id., ECF 32 at 24 ¶ 7, 26 ¶ 18. In exchange for this payment, Henderson agreed "to waive any and all rights to wage loss, disfigurement, specific loss, medical (other than as noted above) or any other benefits to which he may be entitled in conjunction with his alleged work injury or any recurrence, aggravation, or known or unknown sequeala thereof." Id., ECF 32 at 25, 27, ¶¶ 9-10. The Agreement also provided that it represented "payment of all future indemnity claims for the work related injury of 04/27/2007," that there was a "waiver of all future wages relating to the 04/27/2007 injury," and that the $75,000.00 "is compensation for impairment of the Claimant's earning power for the remainder of his life." Id., ECF 32 at 26 ¶ 13. As part of the Agreement, Henderson certified that he understood that "I will receive only the benefits mentioned in this agreement . . . [and] I understand that my employer, its insurance company or its administrator will never have to pay any other workers' compensation benefits for the injury." Id., ECF 32 at 28 ¶ 2. He also waived the 20-day appeal period applicable to workers' compensation claims under Pennsylvania law. Id., ECF 32 at 26 ¶ 18.

## IV. Jurisdiction and Standard of Review

The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a). Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential–Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) "expounded the pleading standard for 'all civil actions.'" 556 U.S. at 684.

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n. 3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). To evaluate whether a plaintiff has met this standard the Third Circuit has instructed that

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citations, alteration, footnote, and internal quotation marks omitted). In doing so, the court must "also disregard 'naked assertions devoid of further factual enhancement.'" Id. at 131 (quoting Iqbal, 556 U.S. at 678).

8

On a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). "However, an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis original). The reason for this exception is that "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice and has relied upon these documents in framing the complaint." Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426) (alterations omitted). "What is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426).

**V.     Discussion**

   **A.     Plaintiff's ADEA Claims Were Not Administratively Exhausted**

Henderson cannot bring a claim under the ADEA. The ADEA provides that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." 29 U.S.C. § 626(d)(1). Henderson's Amended Complaint and exhibits do not allege that Henderson fulfilled this exhaustion requirement. To the contrary, Henderson's EEOC Charge of Discrimination, the EEOC's confirmatory letter, and the EEOC's notice to Edens all indicate that the EEOC was investigating a charge only under the ADA and not under the

ADEA. EEOC Charge, ECF 27-1 at 7-8; EEOC Ltr., ECF 27-1 at 3; Notice, ECF 27-1 at 4. Because he failed to exhaust his administrative remedies, Henderson's claims under the ADEA will be dismissed with prejudice. See Fortes v. Boyertown Area Sch. Dist., No. 12-cv-6063, 2014 WL 3573104, at *7 (E.D. Pa. July 18, 2014) (dismissing gender, sex, and age discrimination claims that were not administratively exhausted).

      B.      The 2009 Compromise and Release Agreement Can be Considered Without Converting This Motion to Dismiss to a Motion for Summary Judgment

Before reaching Henderson's ADA, PHRA, and PWCA claims, the Court must decide whether it can consider the 2009 Compromise and Release Agreement attached to Defendant's Motion to Dismiss without converting the motion into a motion for summary judgment. As discussed above, "a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." Schmidt, 770 F.3d at 249 (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426) (emphasis original).

The Court concludes that the 2009 Compromise and Release Agreement is integral to the complaint. In lieu of alleging facts, Henderson submitted voluminous exhibits with his Amended Complaint. These exhibits included nine pages of documents related to his workers' compensation claims, including a petition for penalties, a notice of suspension of his benefits, correspondence from his attorney disputing the suspension, and partial documentation from a September 2007 settlement. ECF 27-1 at 13-14, 17-22, 45. The 2009 Compromise and Release Agreement is the final resolution of these same workers' compensation claims, with the same parties and the same claim numbers. Compare Pet. for Penalties, ECF 27-1 at 20 and 2007 Decision, ECF 27-1 at 21 with 2009 Decision, ECF 32 at 19. Henderson relies on his workers'

compensation claims as a factual basis for his complaint[4] and the 2009 Agreement is an integral part of those claims. Moreover, it is unfair to Edens to allow Henderson to use portions of his workers' compensation record while excluding from consideration other portions of the record. A motion to dismiss "may not be dodged by a plaintiff's cagey inclusion of only a subset of facially related documents." Davila v. N. Reg'l Joint Police Bd., 979 F. Supp. 2d 612, 636 (W.D. Pa. 2013) vacated in part on other grounds, No. 2:13-cv-70, 2014 WL 3735631 (W.D. Pa. July 28, 2014).

In the alternative, even if consideration of the 2009 Compromise and Release Agreement requires the Court to convert this motion to dismiss into a motion for summary judgment, Henderson is not prejudiced. Henderson was given and took advantage of an opportunity to respond to Edens' motion and exhibit when he was ordered to submit a more substantive response and he filed an additional 44 pages of exhibits. Pl. Response, ECF 37 at 8-51.

For all of these reasons, the Court concludes that it can consider the 2009 Compromise and Release Agreement.[5]

C.     Plaintiff's ADA and PHRA Claims

Henderson's ADA and PHRA claims can be considered together. The Third Circuit has held that "the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated

---

[4] Henderson is trying to assert claims for violations of the PWCA. See More Definite Statement, ECF 26 at 2; Pl. Response, ECF 33 at 2. These claims are explicitly based on the same claims alleged in his workers' compensation proceedings. See Pet., ECF 27-1 at 18-19 (handwritten notes from Plaintiff indicating that his Petition for Penalties identifies the alleged violations of the PWCA).

[5] Edens argues that the 2009 Compromise and Release Agreement was explicitly referenced in Henderson's exhibits, but that reference was to the September 2007 stipulation, not the January 2009 final settlement. See ECF 27-1 at 15-16 (letters dated in September and October 2007 referring to the resolution of Henderson's workers' compensation claims).

11

differently." Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002). With respect to disability law, the ADA Amendments Act of 2008 (ADAAA) relaxed the ADA's standard for disability as of January 1, 2009 and a corresponding change has not been made in Pennsylvania law. Rubano v. Farrell Area Sch. Dist., 991 F. Supp. 2d 678, 689 n.7 (W.D. Pa. 2014) (discussing ADAAA and how it affects the elements of ADA and PHRA claims). However, the Third Circuit has repeatedly concluded in unpublished decisions that the ADAAA is not retroactive, so the ADAAA changes are immaterial here because the alleged discrimination occurred prior to 2009. Lander v. ABF Freight Sys., Inc., 459 F. App'x 89, 92 & n.2 (3d Cir. 2012) (concluding ADAAA is not retroactively applicable and noting agreement among all other circuits that have considered the question); Britting v. Sec'y, Dep't Of Veterans Affairs, 409 F. App'x 566, 569 & n.3 (3d Cir. 2011) (same). As such, the Court considers Henderson's ADA and PHRA claims together under the standards applicable to ADA claims in 2007. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (concluding that "the district court properly treated [plaintiff's] PHRA claims as coextensive with his ADA and ADEA claims").

   Due to the ADA's administrative exhaustion requirement, Henderson's claims are limited to what is alleged in his EEOC Charge of Discrimination. See 42 U.S.C. § 12117(a) (incorporating the procedures from 42 U.S.C. § 2000e–5, including subsection (f)(1) that requires administrative exhaustion). In the EEOC Charge, Henderson makes two claims. First, he alleges that "because [Edens] perceives me as disabled, I have been harassed by having my financial security threatened and adversely impacted." EEOC Charge, ECF 27-1 at 8. The alleged threats and adverse impacts to Henderson's financial security include giving him a smaller raise in October 2007 than other drivers, suspending his workers' compensation benefits from June to September 2007, and forcing him to hire counsel and pay 20 percent of his workers'

compensation benefits as attorneys' fees in order to get his benefits reinstated. Id. The Court interprets this claim to allege disparate treatment and/or harassment under the ADA. Second, Henderson alleges that "in retaliation for previously opposing" unlawful employment practices, Edens "has not awarded me my full earnings" by giving Henderson a raise to $9.93 per hour instead of $10.25 per hour in October 2007. Id. The Court interprets this claim to allege retaliation under the ADA.

    1.  Henderson Fails to State a Claim for Disparate Treatment or Harassment

"In order to establish a prima facie case of disparate treatment under the ADA, a plaintiff must show '(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.'" Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000) (quoting Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir.1998)). To establish a claim for harassment under the ADA, a plaintiff must show "that: (1) [he] is a qualified individual with a disability under the ADA; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on [his] disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive working environment; and (5) that [his employer] knew or should have known of the harassment and failed to take prompt effective remedial action." Walton v. Mental Health Ass'n. of Se. Pennsylvania, 168 F.3d 661, 667 (3d Cir. 1999).

  The Third Circuit has held that "the 'plausibility paradigm announced in Twombly applies with equal force to analyzing the adequacy of claims of employment discrimination.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 322 (3d Cir. 2008)). However, on a motion to

dismiss, "a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. at 213 (internal quotation marks omitted). Accordingly, the Court evaluates Henderson's complaint and exhibits to determine whether they raise a reasonable expectation that discovery will reveal evidence of the necessary elements of Henderson's ADA disparate treatment and harassment claims, including the element of being a "qualified individual" as defined by the ADA.

Even assuming *arguendo* that Henderson could establish that he was disabled or regarded as disabled,[6] Henderson has not alleged any facts suggesting that he was a "qualified individual" during the time of the alleged disparate treatment and harassment in 2007. The ADA defines the term "qualified individual" to mean "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To determine whether a plaintiff is a "qualified individual," the Court must consider, among other factors, "whether the individual can perform the essential functions of the job without accommodation" and, if not, "whether the individual can perform the essential functions of the job with a reasonable accommodation." Deane v. Pocono Med. Ctr., 142 F.3d 138, 146 (3d Cir. 1998). "If a plaintiff claims that he could not do his job with or without reasonable accommodation at the time of his adverse employment determination, he cannot make out a prima facie case of discrimination under the ADA." Garner

---

[6] Edens argues that Henderson has not adequately alleged that it regarded him as disabled. The facts as alleged suggest that during the time of the alleged ADA violations, Edens and its WORKNET doctors actually regarded Henderson as not disabled while Henderson and his private doctors regarded him as completely disabled and unable to work. See Roberts Ltrs., ECF 27-1 at 40-41, 46 & ECF 37 at 11 (repeatedly stating that Edens' WORKNET doctors had cleared Henderson to return to work but Henderson was choosing to stay out of work on the advice of his private doctors). Nevertheless, the Court need not address this element in detail because Henderson's ADA claims are not viable for other reasons.

v. Sch. Dist. of Philadelphia, 63 F. Supp. 3d 483, 489-90 (E.D. Pa. 2014) (holding, at summary judgment, that plaintiff was not a "qualified individual").

      The facts alleged in and attached to Henderson's complaint indicate that Henderson's primary private doctor considered him "totally incapacitated" as of June 1, 2007. ECF 37 at 49. As of June 29, 2007, his doctor opined that Henderson "remains symptomatic and unable to resume his preinjury job duties as a direct result of his April 27, 2007 work-related accident." ECF 37 at 30. Likewise on July 13, 2007 and September 4, 2007, his doctor opined that Henderson "remains symptomatic and disabled as a direct result of his April 27, 2007, work accident." ECF 27-1 at 25, 34. Henderson's medical records indicate that he continued receiving treatment for his injuries in October 2007 and May 2008. ECF 37 at 36-38. In January 2008, on his ADA intake questionnaire for the EEOC, Henderson alleged that "I was not able to perform any job. I am a para[transit] driver. I was not able to drive under the influence of a [prescribed] [narcotic] drug[] as they wanted me to." ECF 27-1 at 9. He further wrote that "I was not and at this point still not able to perform my job to its full[est] capa[c]ity etc." Id.

      In all, Henderson's factual allegations are that his doctor determined he was completely disabled and unable to work from April 2007 until at least September 2007, and that he remained unable to work as a paratransit driver until at least January 2008 due to the need to take narcotic pain medication. After scouring Henderson's complaint and exhibits, the Court has not located any allegation that Henderson was able to return to any type of work in 2007. To the contrary, Henderson sought and received a second opinion finding him totally incapacitated after Edens' WORKNET doctors cleared him to return to work. Henderson also repeatedly asserted that he could not return to work throughout both his workers' compensation claim proceedings and in the EEOC proceedings that gave rise to this case.

15

Henderson's complaint also does not allege that he requested any type of accommodation to return to work and does not suggest any reasonable accommodation that he might have requested to return to work. Instead, the facts as alleged indicate that he requested to be out of work indefinitely and to receive workers' compensation.[7] However, "[t]he weight of authority in the [Third Circuit], as well as other Circuits, clearly establishes that a leave of absence for an indefinite duration is not a reasonable accommodation." Garner, 63 F. Supp. 3d at 492 (collecting cases); Reifer v. Colonial Intermediate Unit 20, 462 F. Supp. 2d 621, 636 (M.D. Pa. 2006) ("It is utterly unreasonable and not within the mandate of the ADA to expect an employer to accommodate an employee with an indefinite leave of absence.").

Thus, Henderson fails to state a claim for disparate treatment or harassment under the ADA because his complaint does not allege that he was able to perform his job with or without a reasonable accommodation and does not raise a reasonable expectation that discovery would uncover any facts to satisfy this element of his ADA claims. Instead, Henderson consistently alleges that he was unable to work at Edens due to his injuries and ongoing treatment. These allegations are insufficient to state a claim for disparate treatment or harassment.[8]

---

[7] The ADA explicitly provides that "[n]othing in this chapter alters the standards for determining eligibility for benefits under State worker's compensation laws . . . ." 42 U.S.C. § 12201(e). Indeed, "Congress intended the ADA to work in tandem with existing workers' compensation laws and complement their provisions for work-related injuries with its remedies for harms not addressed under state statutes." Aponik v. Verizon Pennsylvania Inc., --- F. Supp. 3d ----, No. 15-cv-413, 2015 WL 2417659, at *5 (E.D. Pa. May 21, 2015). The shortcomings in Henderson's ADA claims stem in large part from his attempt to use the ADA to address harms that are covered instead by Pennsylvania workers' compensation law.

[8] To the extent Henderson's disparate treatment claim is based on interference with his workers' compensation benefits, he has also failed to allege that he suffered a cognizable adverse employment action because a workers' compensation claim resolved in the employee's favor "cannot constitute an adverse employment action." McCutchen v. Sunoco, Inc., No. 01-cv-2788, 2002 WL 1896586, at *11 (E.D. Pa. Aug. 16, 2002) aff'd, 80 F. App'x 287 (3d Cir. 2003).

2.      Henderson Fails to State a Claim for Retaliation

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show '(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" Shaner, 204 F.3d at 500 (quoting Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)). Even assuming that Henderson's prior EEOC complaint was a protected action and that Henderson suffered an adverse action in October 2007 when he received a raise to $9.93 per hour instead of $10.25, Henderson fails to state a claim for retaliation because he has not alleged any facts to support a causal connection between the two events.

In the ADA retaliation context, "temporal proximity between the protected activity and [the adverse action] can be itself sufficient to establish a causal link" but "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (internal quotation marks and alterations omitted). The Third Circuit has held that time periods of two days and ten days are sufficiently suggestive, but a time period of "over two months" was "not unduly suggestive" and was insufficient to support an inference of causal connection. Id. at 760-61. Here, the time period between the resolution of Henderson's 2006 EEOC complaint on March 14, 2007 and Henderson's wage increase in October 2007 was over six months.[9] This time period, which is three times longer than the period in Williams that was held "not unduly suggestive," does not support an inference of causation on its own.

---

[9] Henderson's EEOC Charge did not allege that the suspension of his worker's compensation benefits in late May or early June 2007 was in retaliation for his earlier EEOC complaint, but he did make that connection in his final response brief. Pl. Response, ECF 37 at 1-2. Even assuming

17

Where, as here, "the temporal proximity is not so close as to be unduly suggestive, [the Third Circuit has] recognized that timing plus other evidence may be an appropriate test." Williams, 380 F.3d at 760 (quoting Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003)). However, Henderson's complaint and exhibits do not allege any additional facts that suggest a causal connection between Henderson's 2006 EEOC complaint and the amount of his wage increase in October 2007. As such, there is no reasonable expectation that discovery will reveal evidence of this necessary element of Henderson's retaliation claim and Henderson has failed to state a claim for retaliation.

D.  Henderson's Complaint Fails to State a Claim for Violation of the PWCA

It is difficult to decipher whether Henderson is trying to allege a claim under the Pennsylvania Workers' Compensation Act (PWCA), 77 P.S. §§ 1 et seq. His Amended Complaint does not allege any PWCA claims and his final response brief appears to argue that he is not trying to recover workers' compensation benefits. Pl. Response, ECF 37 at 4-5. However, his "More Definite Statement" alleged violations of sections 409, 416, 435, 440, and 1102 of the PWCA, 77 P.S. §§ 733, 821, 991, 996, 1039.2, and his initial response brief referred to violations of "Worker Coumps [sic] Laws." More Def. State., ECF 26 at 2; Pl. Response, ECF 33 at 2. It appears that Henderson took these statutory citations from his attorney's June 12, 2007 workers' compensation Petition for Penalties.[10] Pet., ECF 27-1 at 18-19. To the extent that Henderson is trying to raise one or more claims under the PWCA, he fails to state a claim for two principal reasons.

---

that claim was administratively exhausted and is properly presented here, the length of time between Henderson's protected activity and the alleged adverse action was still about two months or more, which is not unduly suggestive of a causal connection under Williams.

[10] The penalty petition was dismissed as moot by a Workers' Compensation Judge on September 19, 2007. 2007 Decision, ECF 27-1 at 21-22.

First, Henderson waived his rights to any further recovery under the PWCA. In the 2009 Compromise and Release Agreement, Henderson explicitly agreed "to waive any and all rights to wage loss, disfigurement, specific loss, medical (other than as noted above) or any other benefits to which he may be entitled in conjunction with his alleged work injury or any recurrence, aggravation, or known or unknown sequeala thereof." 2009 Decision, ECF 32 at 25, 27, ¶¶ 9-10. The Agreement also provided that it represented "payment of all future indemnity claims for the work related injury of 04/27/2007," that there was a "waiver of all future wages relating to the 04/27/2007 injury," and that the $75,000.00 settlement "is compensation for impairment of the Claimant's earning power for the remainder of his life." Id., ECF 32 at 26. Henderson also certified that he understood that "I will receive only the benefits mentioned in this agreement . . . [and] I understand that my employer, its insurance company or its administrator will never have to pay any other workers' compensation benefits for the injury." Id., ECF 32 at 28. He also certified that he was represented by counsel and that counsel had explained the Agreement to him. Id. The Agreement was approved by a Workers' Compensation Judge who concluded that Henderson "understands the full legal significance of the Compromise and Release Agreement" and that the Agreement was "valid and binding." Id., ECF 32 at 22-23.

Second, under Pennsylvania law, if Henderson was dissatisfied with the 2009 Workers' Compensation Judge's decision, he was required to appeal it within 20 days to the Workers' Compensation Appeals Board. 77 P.S. § 853; 2009 Decision, ECF 32 at 19 (specifying that decision would be final unless appealed to the Board within 20 days). Not only did Henderson not pursue this administrative appeal, he waived his right to such an appeal in the Agreement. 2009 Decision, ECF 32 at 26 ¶ 18 (specifying among the "Miscellaneous provisions" that "Claimant waives the (20) day appeal period"). Furthermore, under Pennsylvania law, to the

extent Henderson wished to seek judicial review of his workers' compensation claims, he was required to appeal a final decision of the Workers' Compensation Appeals Board to the Pennsylvania Commonwealth Court. See 42 P.S. § 763(a) (giving the Commonwealth Court exclusive jurisdiction over final orders from government agencies); 42 Pa. Cons. Stat. Ann. § 5105(a) (establishing general right of appeal from administrative agency final orders); 2 Pa. Cons. Stat. Ann. § 702 (providing right to appeal from agency adjudications). In short, Henderson has both explicitly and by default waived his right to seek judicial review of his workers' compensation claims.

**VI.    Conclusion**

For all of the foregoing reasons, Henderson's Amended Complaint fails to state a claim upon which relief can be granted. Moreover, after a thorough review of all of Henderson's filings, arguments, and exhibits, the Court concludes that further amendment of Henderson's complaint would be futile. Therefore, his Amended Complaint will be dismissed in its entirety with prejudice.

An appropriate order follows.

O:\CIVIL 09\09-1308 henderson v. edens\09cv1308.Memo.Henderson.Edens.MTD.2015.08.19.docx